Page number 09-1107, People v. Ronnie Grant We have both sides present. I think we can ask Counselor Leopold to step forward and begin with an introduction. Good morning, Your Honors. Counsel, may it please the Court. My name is Brian McNeil, and I represent Ronnie Grant in this case. And there's one simple question before the Court this morning, and that's whether probable cause existed in this case. That's a simple question, but it's a little bit more difficult to actually work its way in, in light of the ordinance. Are there cases that actually discuss what constitutes probable cause to make out a violation of an ordinance? Not that we've found, Your Honor. It's certainly not this specific ordinance. And is that the State's position that probable cause existed for the violation of the ordinance as opposed to a violation of a criminal statute? It certainly appears that that's their position, Your Honor. Do they cite a case for that proposition? They cite the City of Chicago v. Powell case, but all that says, it says nothing about probable cause. It only indicates that soliciting unlawful business is a valid offense and that people can be arrested for it. It doesn't indicate what level of crime. And Justice Griman discussed, there were multiple defendants involved in that case. That's correct. And he discussed two in particular, Powell and Woods. That's right. And the State makes the claim that this case is more like Powell, but if it were like Woods, and you know what happened to the complaint against Woods. That's correct. Why isn't this case more like Woods? Well, no matter the offense that they were arrested for, there's no indication that there's a lesser quantum of probable cause required. Here, all that Mr. Grant did was say, drove once to a single passing car while standing in a high crime area. It might be a different case if he had said it to a dozen or even three or four passing cars, but he only said it once. I found it kind of curious that in Woods, the complaint was dismissed because according to the offering judge, what was blows was not something an ordinary individual would understand the meaning of. I myself have never heard of the term drove, drove. I have never, never run across that in the 15 years I've been a judge. I don't know that such a term is connected with cannabis. Nor have I, Your Honor. This is the first I've ever heard of it. But the officer testified. He did testify to that, Your Honor. That's correct. I'm sorry. Go ahead. Well, neither side really has talked about, you know, there's a lot of prostitution cases out there involving solicitation. Do you recall some of those? Or, you know, was more needed than, you know, words by one person to the other, like an invitation? Was there more needed? Well, the important thing here, what's interesting about drug cases, since that's what they were clearly going after here, is that there are standard classic indicia of drug activity that we've seen in countless cases, whether they involve this particular ordinance or just your standard, you know, possession with intent to deliver, such as running or discarding objects when the police approach. Sure. Or exchanging money in exchange for some object. That's correct. Okay. But this, we have an ordinance here that makes it criminal to solicit for unlawful business. That's true, Your Honor. Okay. So, I mean, yes, I think we're all aware of these cases where there's probable cause if you have multiple transactions that the officer is able to observe. Or any. So we don't have that. But what this ordinance allows is for a solicitation offense. That's correct. So I'm asking, you know, neither side seemed to look at any of these other cases, and maybe they would have been helpful, whether an invitation with words that are sort of unfamiliar to most, and how do we pull out of this that the words were actually directed at the other vehicle? Do we even have that much? Well, the officer did say that it was directed at the one vehicle. But it was only one vehicle, and he said that there were many passing vehicles. The officer also testified that there were pedestrians in the area, and that Mr. Grant didn't interact with them in any way. He certainly didn't say, dro, dro, to any of them. Let me interrupt and build a little on Justice McBride's point regarding solicitation of prostitution, for example. Can an individual, do you think an individual has violated the ordinance if he goes up to a group of women and says, you know, how much do you charge? Is he guilty of soliciting a prostitute, assuming none of them are prostitutes? Is that solicitation? I guess it's getting to the point of saying, dro, dro, in a forest, and no one hears you. Are you soliciting for an unlawful business? Do we need more than simply, as Justice Garcia said, how much do you charge? Or the other person on the other side saying, you know, whatever. I can't think of a phrase at the moment. But would that have been enough for probable cause? I would analogize the statute to solicitation for prostitution. And my question is, is dro, dro, being directed at a vehicle, is that enough of an invitation to establish probable cause? I don't think so, Your Honor. And I think it's distinct from the scenario that Justice Garcia described. There you have a group of people who I believe in your scenario are clearly engaged in prostitution. And you have someone approaching them, attempting to. They're not engaged. And the question is, the person thinking they are would be soliciting, even though they're not. I think that might be closer than this case, Your Honor, because, again, the lack of standard drug indicia I think are very important because we tend to see that here. The officer said that they were going to this area to observe drug activity. And the fact that none of these standard classic indicia were present should have given them pause. Even if they heard him say, dro, dro, once, maybe that led them to suspect that something was going on. But then they should have looked around, considered the fact that he doesn't have any actual drugs or drug paraphernalia. He's not engaging in any actual transactions. They proceeded straight to a full-blown warrantless arrest in this case. And the state pretty much concedes that. That's correct, Your Honor. They do not argue otherwise. An officer's hateful testimony in any case strongly indicates that this was an arrest here. The judge said for her ruling denying the motion that she found the officer credible. Does the credibility of the officer come into play at all? In our opinion, it doesn't, Your Honor. Whether he was credible or not does not establish whether Mr. Grant's uttering, dro, dro, a single time constitutes probable cause, even when you consider the officer's testimony concerning his experience with the term. Whether he's credible or not does not establish that this is enough to execute a full-blown warrantless arrest. Now, we concede there might have been reasonable suspicion here. In light of the officer's experience, he might have had reason to wonder if maybe something was going on. However, that would only have allowed them to make further observations or they could even have detained Mr. Grant briefly for a discussion. But until failing that, failing further indications of drug activity, such as shouting to additional cars or interacting with any of the pedestrians or engaging in an actual transaction, there simply was not probable cause in this case, Your Honors, whether it's for a violation of this ordinance or for any other crime. We just don't have enough here. All he did was say, dro, dro, a single time to a single passing car. And it's, we don't know what he meant. It's not clear. Would rocks and blows be enough to one car? To one car. Let's just change the words a little. I don't think they would, Your Honor. Maybe you're getting a little bit closer since those are more commonly understood to be. Well, there's certainly not a case out there that suggests that. Uttering rocks and blows to a single car would amount to probable cause. Not alone. There certainly is. There are multiple cases that alert the police to maintain observation of an individual yelling rocks and blows to see what develops. That's correct, Your Honor, and that's exactly what the author should have done in this case. And that certainly could suggest that more is required than simply the verbalizing words alone. That's certainly our position, Your Honor. And if they were concerned that some sort of illegal activity was going on, there was nothing stopping them from waiting and observing the situation longer just to see what developed. But they didn't do that in this case. They simply jumped the gun before they had any reasonable indicia of any actual illegal activity. We're going to give you a few minutes to reply. You should not have proceeded to a full-blown arrest. The arrest was illegal. And we ask that you reverse the denial of motion to suppress and reverse Mr. Grant's conviction. Thank you very much. Your Honor. Good morning. Good morning. May it please the Court, Assistant State's Attorney Adam Deltafield appearing on behalf of the people in this matter. Is this your first appearance here arguing? It is, Your Honor. So good morning. And I don't see your name on the briefs or anything. They gave you a good one to start with, huh? Hopefully. Correct. I did not write this brief. Do you travel uphill well? Pardon? Is it easy to walk uphill? No. Well, you know. I guess, yeah. Well, welcome. Thank you. Yes. Correct. The issue here is that whether or not probable cause existed to arrest defendant for the solicitation of unlawful business. The solicitation of unlawful business occurs where a person stands on, occupies, or uses the public way to solicit unlawful business. Solicitation may consist of merely words. And the unlawful business involved here was the drug trade. Are you saying that a violation actually occurred here, or are you saying that probable cause of an ordinance violation occurred here? Well, certainly, if the actual offense occurred and was witnessed, then probable cause would exist to go and arrest him. So did a violation of the ordinance occur here? I would agree that, yes, a violation of the ordinance did occur. So what constituted the violation itself? Just the saying of the words? Well, no, because the elements also require that he be standing on the public way. Defendant was observed. So he could be, if he were in his own bathroom, saying those words wouldn't matter, but in a public way it would? Yes, for the purposes of soliciting unlawful business. Does, do most ordinance concern themselves with public matters as opposed to private matters? So I'm not sure that standing in a public way says anything other than the obvious. Well, it's an element of this ordinance itself. That's why it's important. But ordinance generally don't concern themselves with matters done in private, right? So I don't know why standing in a public way would say anything other than, of course it has to be standing in a public way. How else do you get a violation? How else do you get an ordinance? Why else would an ordinance be concerned with, ordinance wouldn't be concerned with private matters. Certainly, I see your point, but it's not. Stop for a moment. An ordinance is passed to promote the health, safety, and public welfare of the community, is it not? Yes, Your Honor. That's the purpose of it. Okay. And where it is a penal ordinance, it could be punished with incarceration. It may be prosecuted as a criminal offense. And here the ordinance involved yelling, drow, drow to solicit a drug sale. You're certainly aware of individuals who yell out, blows rocks, as Justice McBride pointed out, or even in this case, drow, drow, who don't have the illicit substance on their person. They have it concealed somewhere else. Are you saying that the City of Chicago should go about arresting everyone who yells out rocks, blows, and take them into custody without any evidence of an illicit substance on their person? Well, having the illicit substance on the person is not an element of this offense. I understand that. And are you advocating that that is exactly what the City of Chicago wants done? It wants the police department to go around about arresting everyone for violation of this ordinance to protect the public safety? Well, I'm not privy to the desires of the City of Chicago, but in terms of the people of Illinois. You represent the county of Cook. Right. In this particular instance, though, there's more than that. And you're relying on a city ordinance to support what the police did in this case. Right, Your Honor. But in this case, there's more to it than just yelling, drow, drow. In this particular instance, it's important that the court found Officer Heffel's testimony to be credible here. Because Officer Heffel testified. Does anyone believe that Officer was not credible? No. Is there really an issue of credibility here? No, but it's what Officer Heffel testified to that builds on the fact that the defendant was not merely saying two words. Did he give some indication of what he thought was going on? Correct, Your Honor. What did he say? He said that in his three years' experience working in that district, that he has been explained many times, that drow, drow is a term specifically yelled out when you're hawking cannabis. Okay. It's specific for selling. So he said, didn't he turn to his partner and say, I think? No, Your Honor. His exact words were, hey, he's standing on the weed spot, and he just said drow, drow. Okay. And then his officers agreed. So he didn't even articulate that he thought that this was a narcotics transaction? In the few seconds that he turned to his officer, no. Okay. So he just said, he's standing on the weed spot, and he's yelling drow, drow. That's correct. And then what did he say? Well, then the testimony follows that Officer Sewing, who was the officer sitting next to him driving the vehicle, said, well, confirmed, he agreed that that was what had occurred. Yes. And then he said, we're going to pull up on him because he's going to run away. Okay. And then they pulled within five to ten feet. And they were wrong about that, weren't they? He didn't run away. Correct. He didn't do anything. He froze on the spot is what the testimony was. Didn't drop anything? No, Your Honor, he didn't drop anything. There was nothing to add to what they thought was their probable cause. Correct, Your Honor. And the police didn't ask him, what are you selling? What do you got in your pockets? What are you doing out here? They just went ahead and arrested him and began the search. Presumably they already knew what he was selling in the sense that he had said drow, drow, and they recognized that as the specific language in that area to mean I'm selling cannabis. So there you go again. You are saying that every time anyone voices those words, the Chicago Police Department has the right to arrest these individuals and take them off the street. When it's said for the purpose of soliciting unlawful business, yes. Is it said for any other purpose that you're aware of? Like you said earlier. Drow, drow? Your Honor, as you said earlier, he could be sitting in his bathroom saying drow, drow, and it wouldn't be for purpose. Well, would the police be able to observe that? Unlikely, right? Right, Your Honor. But it has to be on a public way. And it has to be for the solicitation of unlawful business, which was established here. Well, that solicitation of unlawful business, that purpose of solicitation of unlawful business, other than the words, what else is there? There's the fact that he was standing at the recognized spot for drug transactions. So had he moved a little bit off that weed spot, whatever that spot is, had he moved a block away, the police wouldn't have taken this action? Is that what you're saying? I'm not sure what the police would have done, but it would have been a different fact pattern here, particularly if he was in the recognized spot for the sales of weed, and he was yelling it to passing traffic, which were his customers. So if you, depending on where you yell certain words, you could risk being arrested? Well, an analysis for the determination of probable cause involves the totality of the circumstances. And regarding the totality of the circumstances, that's an important factual detail in this case. Yes, Your Honor. Is there some sort of logic to this statement in Powell that the city should not have to wait until an actual violation of a real criminal law occurs and then arrests the suspect? Is there some problem with that statement? In other words, it's like saying there really wasn't a crime here. And they shouldn't have to wait for that to occur, and yet they're saying it did occur. Does that make any sense? Well, I would have a problem. Firstly, just to point out, earlier I'd mentioned in the code that it states a municipal ordinance, a penal ordinance, may be prosecuted as a criminal offense. And so this is a serious issue. And furthermore, I would agree that officers shouldn't have to wait until a more serious event occurs. So the language really meant they shouldn't have to wait for another offense besides the offense of solicitation, which is merely the soliciting of unlawful business. Correct, Your Honor. Any number of greater crimes. So there is this element that that solicitation has to be for an unlawful transaction. Well, it has to be for unlawful business. All right, unlawful business. All right, unlawful business. But traditionally, that has been exposed through observations of even a couple of exchanges. Well, for probable cause purposes, it would be established by totality of the circumstances. Yes. I agree. There has to be an intent to engage in unlawful business, and then they have to solicit it by words or gestures or symbols. Right, he has to solicit. So we need that probable cause for the offense. Right. Do you think we can pull out of this one that there was not only the words, but also probable cause to believe he intended to solicit a narcotics transaction from a vehicle? Yes, Your Honor. I believe we can definitely establish that from what was brought out of the hearing. Can you give us any single case that would possibly suggest that, some guidance? Unfortunately, Your Honor, this municipal penal ordinance hasn't had a case law on what constitutes probable cause. How long do you think the ordinance has been on the books? I'm not entirely sure of when the year was first heard, which year. Oh, we know Paul was written in what? 2000, Your Honor. 2000. So it was on there before that. Correct, Your Honor. Any reason that comes to mind why a case like this hasn't come before the appellate court in the past? No, Your Honor. I guess all sides have agreed in the past. What about solicitation for prostitution cases? Would it be enough? We're sort of like talking about the same thing. This is solicitation for unlawful business. It's meant to target not only prostitution, but narcotics trafficking, any kind of unlawful business. Correct, Your Honor. So would words like, would that be enough for probable cause for a like offense, prostitution? I'd like to think so, Your Honor, but in this particular case, there's more than just the words. So it would be a different case if all that happened was a man going up, as the example was earlier, and said, how much are you charging? We have the officer saying, he's at the weed spot. He's at the weed spot. In the particular language here, it's not dro-dro. There's cases, though, that have people on Cicero Avenue, parts of Cicero Avenue. It's a known spot for prostitution. Right. So is that enough? We're at a known prostitution spot, and some man walks up and says, what do you charge? Well, in that instance, if there's no testimony about how much do you charge, whether that's fundamentally meaning I want to pay, or whether it's just idle curiosity, here you have it, where it literally means I'm selling cannabis, dro-dro. Well, that's not what he said. If he said I've got some cannabis for sale and he wants some marijuana, maybe that would be a different case. But the officer's testimony during the hearing was that dro-dro, in his three years' professional experience, it's been explained many times to him that that is particularly what you say when you're hawking cannabis. So it was the literal meaning of that term was I'm selling it. You know, I think one of Justice McBride's points is that you take a look at the ordinance and solicitation, the words that were verbalized, goes to solicitation. Correct, Your Honor. It does define solicitation. Then we need something that the individual did to demonstrate or to go to the unlawfulness of the business that he is engaging in. And you cannot, I would suggest, use the same words as meaning as satisfying both. And to the extent that we need something else, I'm not sure that there is anything else. And you say about the weed spot, but that's the weed spot in the mind of the officer. If it's a weed spot in the mind of the defendant, and you had evidence of what the defendant recognized as a weed spot, you might have something else. Well, Your Honor, the court can rely on the professional experience of the officer here. He's not someone who doesn't know what he was talking about in this instance. We have no doubt that the officer knew exactly what he was talking about. There's no question about that. Right. The question is whether it was legally sufficient for a court to say that was enough to arrest and search and let everything else come about that did. Well, certainly, of course, it's our position that that is sufficient, where a man is standing on the weed spot saying, But the weed spot, unless there's a sign saying this is the weed spot, the weed spot comes from the officer's own knowledge or what he believes is his conscious thought. It doesn't necessarily mean that an individual knows that, and it doesn't mean that a court, in taking an objective view of the evidence, is taking the same viewpoint. Right, Your Honor, except in this particular case, the trial court decided that Officer Heffel's testimony was credible. There's no doubt. As I said, there's no doubt that he recognized the weed spot as being that spot. And on issues of fact, this court should follow with the trial judge unless it's manifestly erroneous. Well, what about the requirement of the statute, though, that tells us what unlawful business is? Now, remember, we need an attempt to solicit unlawful business. And unlawful business is defined. It means in any exchange of goods or services for money or anything of value where the nature of the goods or services is unlawful. We don't have any evidence of an exchange here, not a single bit. Do we ignore that requirement of the statute? Probable cause means that the officer has enough information to believe reasonably that a crime was committed and that the offender committed that crime. Now, we have a definition of unlawful business. Unlawful business is an exchange. We don't have an exchange here. Do we still have probable cause when we don't have evidence of an exchange? Certainly soliciting for the exchange. But the statute requires two things, an intent to engage in unlawful business and words or gestures supplying that intent. But unlawful exchange or unlawful business is fully defined here. It tells us it has to be an exchange. It doesn't say it's, you know, not limited to. It specifically defines it as an exchange. Can we have probable cause to solicit when we have no evidence of an exchange? He didn't walk up to the car. He didn't put his hand in. He didn't get anything. Is that missing or does it matter? I don't believe that's fatal to our position in this case at all, Your Honor. All right. I want to ask you a couple questions about this ordinance. Certainly. If somebody is standing in the public way and they're selling bananas without a license, they would be violating this ordinance, wouldn't they? If they were soliciting the unlawful business of selling bananas without a license. Well, they're selling bananas. They don't have a license to sell bananas, so it's unlawful. They're standing in the public way and they're soliciting the unlawful business? Yes, standing in the public way. Yes, if the officer sees them in the commissioner's defense. And some of the poor neighborhoods of the city of Chicago where the high schools don't have football uniforms and the kids stand out there soliciting money without licenses so they can have a football uniform, that would be unlawful too, wouldn't it? Certainly. Right, Your Honor. I see your point. Because everything that's done in the poor neighborhoods of the city of Chicago would be unlawful for everybody because that's what they do day in and day out, wouldn't it? I'm not sure if they do that day in and day out. But, yes, Your Honor, I see your point that if he's on the public way soliciting this unlawful business due to a lack of a license, then he would violate this ordinance. Okay, thank you. Thank you, Your Honor. It is for these reasons and those in our brief that we ask that the Court affirm the defendant's conviction. Counsel, very briefly. Let me just ask you, once again, the probable cause goes to the criminal offense or to the solicitation or the ordinance violation? Well, Your Honor, in our opinion, there's no difference here. You need probable cause for a warrantless arrest no matter what the defendant is arrested for. And that's exactly what happened here. And the State's position would allow a warrantless arrest any time that anyone says, dro, dro, for any reason while standing on a public way. The reason I have some difficulty with the ordinance violation, the probable cause connecting probable cause to the ordinance violation, because normally probable cause, as Justice McBride quoted, is probable cause that a crime occurred. And a crime, a crime is a crime. It's not an ordinance violation. And, you know, I hate to think that we can lower the quantum of evidence needed for probable cause. If the ordinance violation doesn't require much, then you would think that probable cause of a violation of that ordinance requires a whole lot less. And how far less are we going to get? Well, Your Honor, there's no case law to indicate that that's the case. And the intrusion on Mr. Grant in this situation is the same in any situation. He was arrested without a warrant. That the constitutional violation, or the constitutional intrusion on the person, is the same whether it's an ordinance violation or a criminal violation if we find that probable cause of an ordinance violation is sufficient. That's correct, Your Honor. It's the same intrusion. The standard should be the same. There's no basis for allowing a lesser standard of probable cause to control in this case. Do you think there's – can you have probable cause without some evidence of an exchange? When the statute defines unlawful business as an exchange. You need some sort of indicia that there's some sort of unlawful activity happening here. That's the problem with the State's position, is that they would allow an arrest anytime anyone says, drow, drow, on a public way, no matter what else is happening out there. We don't have any evidence showing any actual transactions. We don't have him engaging any of the classic indicia of drug dealing activity. To be fair, the State wants to offer additional information, but that additional information is in the mind of the officer, not in the actions of the defendant. If the officer recognizes that spot as being a weed spot, that that should be part of the analysis as to whether probable cause exists. Well, that's true, Your Honor, and that is part of the State's argument. But even accepting that that's a factor here, the officers, if they're going to look for drug dealing activity, they should have been on the lookout for classic indicia of drug activity, such as actual transactions, running or discarding objects when the police approach. The fact that none of that happened in this case strongly indicated that whatever Mr. Grant was doing by yelling drow, drow, he wasn't necessarily soliciting unlawful business. At most, the officers in this case had reasonable suspicion, and they could have investigated further to see whether probable cause developed, but they jumped the gun and did not, and therefore the arrest was illegal. There was a question I asked of counsel why we haven't run across this sort of case in the past, and I'm not sure what the answer was, but to the extent that no one questioned the outcome in those cases, there may not have been an appeal, but generally there isn't an appeal if the motion is sustained. That's also true, and I think that in most cases you see police officers getting further information before they're pursued with a full-blown arrest. I think this is a very rare case in that sense, Your Honor. All right. Thank you very much. The case will be taken under advisement.